# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JESSICA POTTER,                          :

           Plaintiff,                 :

                                           Case No. 3:09CV0169

  vs.                                    :

                                           District Judge Timothy S. Black

MICHAEL J. ASTRUE,                       :     Magistrate Judge Sharon L. Ovington
     Commissioner of the Social
     Security Administration,             :

           Defendant.                :

---

# REPORT AND RECOMMENDATIONS[1]

---

## I.    INTRODUCTION

This is an action instituted under the provisions of 42 U.S.C. §§ 405(g) and 1383 for review of a final decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits ["DIB"] and supplemental security income ["SSI"].  This matter is before the Court on Plaintiff's Statement of Specific Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Response (Doc. #13), the administrative record, and the record as a whole.

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff Jessica Potter filed an application for DIB in June 2000, alleging disability from February 15, 1999, due to left knee problems, a brain aneurysm, AV malformation, illiteracy, and "nerves." (Tr. 123). Plaintiff's application was granted at the initial stage due to an affective disorder and borderline intellectual functioning. (Tr. 42, 576). She received a closed period of disability from February 1999, her alleged onset date, through December 2003, when the Agency determined that Plaintiff's health had improved and she was able to return to work. (Tr. 61-63, 66-91). The cessation of benefits was affirmed by an Administrative Law Judge ["ALJ"] in a hearing decision issued on January 14, 2005. (Tr. 576-87). As the Appeals Council declined review on March 17, 2006 (Tr. 26), making that hearing decision the Commissioner's final determination, principles of *res judicata* and collateral estoppel dictate that the earliest date that Plaintiff could be found to be disabled is January 15, 2005.

Plaintiff's current applications for DIB and SSI were filed in February 2005. After various administrative proceedings, ALJ Thaddeus J. Armstead, Sr. denied Plaintiff's DIB and SSI applications based on his conclusion that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 35).

2

## II.     BACKGROUND

Plaintiff was 29 years old at the time of the administrative decision, and thus was considered to be a "younger individual" for purposes of resolving her DIB and SSI claims.  *See* 20 C.F.R. §§ 404.1563(c); 416.963(c);[2] (*see also* Tr. 34).  She attended school through the eighth grade and earned a General Equivalency Diploma ["GED"].  *See* 20 C.F.R. § 416.964(b)(4); (*see also* Tr. 59, 129, 544, 619).  Plaintiff has worked in the past as a nurse's aide and a fast food worker.  (Tr. 626).

Plaintiff testified at the administrative hearing that she no longer could work due to the medications she took for post-traumatic stress disorder ["PTSD"], which would not allow her to stay awake.  (Tr. 1049-50).  She said that she had been treated at Advanced Therapeutic Services since 2001, but had seen no improvement in her condition.  (Tr. 1053-54).  As to her daily activities, Plaintiff testified that her roommate took care of everything.  (Tr. 1055).  She spent a typical day watching television.  (Tr. 1058).  She testified that her driver's license had been suspended because she could not show proof of insurance after being pulled over for "a muffler ticket."  (Tr. 1045-46).

---

[2] The remaining citations will identify the pertinent SSI Regulations with full knowledge of the corresponding DIB Regulations.

3

Brian Womer, a vocational expert, also testified at the administrative hearing.  (Tr. 1059-63).  Mr. Womer testified that Plaintiff's past work as a nurse's aide was medium and semi-skilled and that her job as a fast food worker was light and unskilled.  (Tr. 1060).  The hypothetical question posed to Mr. Womer supposed an individual of Plaintiff's age, education and work experience, who was limited to light exertional work and simple repetitive tasks done primarily at her workstation, with only occasional climbing of ramps and stairs; no climbing ladders, ropes or scaffolds; and no exposure to hazards, unprotected heights, dangerous moving machinery, or extremes of heat, cold, wetness, humidity, noxious fumes, gases or poor ventilation.  (Tr. 1060).  Such person also could have only occasional or less contact with co-workers, supervisors and the public, with such contact being only incidental and not be essential to her job; only occasional work setting and work routine changes; would not have to rely on her reading skills, and any reading required would be at no more than at the second grade level; and would not have to count money or anything that required more than very simplistic addition or subtraction.  (Tr. 1061).  Mr. Womer testified that such an individual could not perform her past relevant work, but could perform at least 4,000 light jobs, including small parts assembler, assembly machine tender, inspector and hand packager.  (*Id.*).  Mr. Womer also identified 1,500

4

sedentary jobs, including sprayer assembler, polishing machine operator and wire insulator. (*Id.*). Mr. Womer further testified that if any individual were to miss more than four days of work per month for any reason, she would not be able to maintain the entry level, unskilled jobs he identified. (Tr. 1063).

Plaintiff's Statement of Errors does not challenge the ALJ's findings with respect to her alleged exertional impairments. (*See* Doc. #9). Accordingly, the Court will limit its review of the medical evidence to that evidence related to Plaintiff's alleged mental impairments.

Plaintiff received mental health treatment at Advanced Therapeutic Services from February 2003 through December 2007. (Tr. 844-905, 1009-19). When Plaintiff initially was assessed, the counselor's impression was PTSD. (Tr. 896-98). Dr. Gollamudi, Plaintiff's treating psychiatrist, reported that Plaintiff's diagnoses were PTSD and major depression. (Tr. 894-95). Dr. Gollamudi prescribed medications and saw Plaintiff about once a month. (Tr. 844-905, 1009-19). Dr. Gollamudi's treatment notes reflect that Plaintiff's mood and affect generally were anxious. (Tr. 556, 881, 882, 890). In February 2005, Dr. Gollamudi reported that Plaintiff had marked limitations in 12 out of 20 areas of mental ability. (Tr. 935-36). Dr. Gollamudi also opined that Plaintiff was unemployable for 12 months or longer. (*Id.*).

Plaintiff's therapist at Advanced Therapeutic Services, Audrey Violand, a licensed social worker, noted in April 2005 that Plaintiff's mood and affect were anxious and she expressed some suicidal ideation. (Tr. 865). In May 2005, Ms. Violand noted that Plaintiff had been unmedicated for the past month because she could not afford her medications. (Tr. 864).

On May 16, 2005, Plaintiff underwent a consultative psychological examination with Giovanni M. Bonds, Ph.D., on behalf of the Ohio Bureau of Disability Determination. (Tr. 717-24). Plaintiff reported that she had been raped by her mother's boyfriend in 2000 and 2001. (Tr. 717). Although a police report was filed and the case went to court, her mother's boyfriend was found not guilty. (*Id.*). Dr. Bonds reported that Plaintiff seemed nervous during the interview, but her speech was clear and her thought process was logical, coherent and goal- directed. (Tr. 719). Plaintiff's mood was depressed and her affect was broad and appropriate to her thought content. (*Id.*). Plaintiff had some insight (Tr. 720) and her attention was good (Tr. 720-21). Plaintiff reported that she sometimes had recurring images and memories of her mother dying in bed next to her (Tr. 719), and at times had seen her deceased mother. (Tr. 720).

Dr. Bonds opined that Plaintiff did not have sufficient judgment and reasoning abilities to live independently, make important decisions about her

6

future, and manage her funds. (*Id.*; *see also* Tr. 723). He noted that Plaintiff reported spending her time coloring in coloring books. (Tr. 720).

Dr. Bonds administered the Wechsler Adult Intelligence Scale–Third Edition (WAIS-III), which resulted in a Verbal IQ score of 65, a Performance IQ score of 64, and a Full Scale IQ score of 62, in the extremely low range of intellectual functioning. (Tr. 721). Dr. Bonds also administered the Wechsler Memory Scale–Third Edition (WMS-III) and reported that Plaintiff scored in the extremely low range of memory functioning with respect to her immediate and working memory indexes, and in the borderline range as to her general memory index. (*Id.*). On the Gray Oral Reading Test–Fourth revision, Plaintiff scored at the 5.2 grade equivalent for reading comprehension, at the 3.0 grade equivalent for rate, and at the 4.4 grade equivalent for accuracy. (*Id.*).

Dr. Bonds diagnosed Post-Traumatic Stress Disorder - chronic, Depressive Disorder NOS, and Borderline Intellectual Functioning, and assigned Plaintiff a Global Assessment of Functioning (GAF) score of 50. (Tr. 722). Dr. Bonds found that Plaintiff could perform basic self-care tasks but was not able to live independently. (*Id.*). He opined that Plaintiff's mental ability to relate to peers, supervisors, or the public was moderately limited due to her depression, anxiety, and distrust of others. (Tr. 722-23). Dr. Bonds further stated that Plaintiff's

7

mental ability to understand, remember and follow directions was moderately limited due to her low IQ scores and extremely low scores on immediate and working memory indexes.  (Tr. 723).  According to Dr. Bonds, Plaintiff's mental ability to withstand the stress and pressure associated with day-to-day work activities also was moderately limited due to her anxiety, depression and poor coping skills.  (*Id*.).  Only as to her mental ability to maintain attention, concentration, persistent and pace did Dr. Bonds conclude that Plaintiff was not significantly limited.  (*Id*.).

In June 2005, Michael D. Wagner, Ph.D., a state agency reviewing psychologist, opined that Plaintiff had moderate limitations in functioning (Tr. 725-42), but concluded that Plaintiff was capable of performing simple, repetitive tasks that involved little contact with others.  (Tr. 727).  Jennifer E Swain, Psy.D., another state agency psychologist, affirmed Dr. Wagner's opinion in October 2005.  (*See* Tr. 725).

In July 2005, Ms. Violand completed a mental functional capacity assessment form, indicating that Plaintiff had marked and/or extreme limitations in the areas of understanding and memory, sustained concentration and persistence, and social interaction.  (Tr. 937-38).  She opined that Plaintiff was unemployable for 12 months or longer due to her mental impairments.  (Tr. 938).

8

In December 2006, Plaintiff hospitalized after attempting suicide by drug overdose. (Tr. 912-25). The attending physician reported that Plaintiff said she wanted to be with her mother in heaven. (Tr. 924). Plaintiff was diagnosed with depression and an acute respiratory failure and intraventricular conduction defect, secondary to polysubstance overdose. (Tr. 912). Plaintiff was discharged in stable condition and told to follow-up at Advanced Therapeutics. (Tr. 913).

On December 1, 2007, Ms. Violand completed a mental impairment questionnaire regarding Plaintiff. (Tr. 998-1001). She indicated that Plaintiff experienced blunt, flat or inappropriate affect; generalized persistent anxiety; mood disturbance; recurrent and intrusive recollections of a traumatic experience which are a source of marked distress; persistent disturbances of mood or affect; apprehensive expectation; and sleep disturbance. (Tr. 999). Ms. Violand also reported that Plaintiff had marked difficulties in maintaining social functioning and marked difficulties maintaining concentration, persistence or pace. (Tr. 1000). Ms. Violand concluded that Plaintiff would miss more than four days of work per month as a result of her impairments or treatments. (Tr. 1001).

On December 3, 2007, Dr. Gollamudi reported that Plaintiff experienced depressive syndrome characterized by sleep disturbance, decreased energy, difficulty concentrating or thinking, and thoughts of suicide. (Tr. 1002-08). Dr.

9

Gollamudi also reported that Plaintiff had marked difficulties in maintaining social functioning, concentration, persistence or pace.  (Tr. 1003).  Dr. Gollamudi diagnosed Plaintiff with Post-Traumatic Stress Disorder, Chronic.  (*Id*.).  Dr. Gollamudi further reported that Plaintiff exhibited marked or extreme difficulty in using public transportation, planning daily activities, and initiating and participating in activities independent of supervision and direction.  (Tr. 1005).

According to Dr. Gollamudi, Plaintiff also had marked or extreme difficulty in getting along with family and friends; initiating social contact; responding to those in authority; responding without fear to strangers; establishing interpersonal relationships; and holding a job.  (Tr. 1005-06).  Dr. Gollamudi reported that Plaintiff had exhibited marked or extreme difficulty in sustaining focused attention and concentration as to independent functioning; concentration; persistence in tasks; ability to complete tasks in a timely manner; ability to assume increased mental demands associated with competitive work; and ability to sustain tasks without undue interruptions or distractions.  (Tr. 1006).  Dr. Gollamudi indicated that in stressful circumstances, Plaintiff had exhibited exacerbation of signs of illness; inability to cope with schedules; and poor decision making.  (Tr. 1006-07).  Dr. Gollamudi concluded that Plaintiff had a current history of one or more years of inability to function outside of a highly

10

supportive living arrangement, with an indication of the need to continue such an arrangement. (Tr. 1007-08).

## III.   THE "DISABILITY" REQUIREMENT & ADMINISTRATIVE REVIEW

### A.   <u>Applicable Standards</u>

To be eligible for SSI or DIB, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§ 423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job, and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986). A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

The Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. (*See* Tr. 27-28); *see also* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any Step terminates

the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully

considered, the sequential review considers and answers five questions:

>    1.    Is the claimant engaged in substantial gainful
>          activity?
>
>    2.    Does the claimant suffer from one or more severe
>          impairments?
>
>    3.    Do the claimant's severe impairments, alone or in
>          combination, meet or equal the criteria of an
>          impairment set forth in the Commissioner's
>          Listing of Impairments, 20 C.F.R. Subpart P,
>          Appendix 1?
>
>    4.    Considering the claimant's residual functional
>          capacity, can the claimant perform his or her past
>          relevant work?
>
>    5.    Considering the claimant's age, education, past
>          work experience, and residual functional
>          capacity, can the claimant perform other work
>          available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279

F.3d 348, 354 (6th Cir. 2001).

   **B.    The ALJ's Decision**

   At Step 1 of the sequential evaluation, the ALJ found that Plaintiff met the

insured status requirements of the Act through September 30, 2005.  (Tr. 29).  The

ALJ also found that Plaintiff had not engaged in substantial gainful activity since

January 15, 2005.  (*Id.*).

The ALJ found at Step 2 that Plaintiff had the severe impairments of chronic bronchitis, emphysema, a history of lumbar sprain/strain, obesity, depressive disorder, posttraumatic stress disorder, and borderline intellectual functioning.  (*Id.*).  The ALJ determined at Step 3 that Plaintiff did not have an impairment or combination of impairments that meet or equal the level of severity described in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 31).

At Step 4, the ALJ found that Plaintiff retained the residual functional capacity to perform a limited range of light work subject to the following additional nonexertional restrictions:

> job done primarily at her work station; the opportunity to alternate between sitting and standing for fifteen minutes of each hour, at her convenience; occasional climbing of ramps/stairs; occasional crouching and stooping; no exposure to hazards, such as, or similar to, unprotected heights and dangerous moving machinery; not even moderate exposure to concentrated heat, cold, wetness, humidity, generally noxious odors, gases, or poor ventilation; simple repetitive tasks; occasional or less contact with co-workers, supervisors, and the public: contact not essential, but incidental to the job; jobs that do not rely on reading skills, but which would not require more than 5.2 grade level reading skills; occasional work setting and routine changes; and no jobs counting money or that rely on other than simple addition and subtraction.

(Tr. 31).  The ALJ further found that Plaintiff was capable of performing jobs that existed in significant numbers in the national economy.  (Tr. 34).  This

13

assessment, along with the ALJ's findings throughout his sequential evaluation, led him ultimately to conclude that Plaintiff was not under a disability and hence not eligible for DIB or SSI.  (Tr. 35).

## IV.    JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . ." *Rogers*, 486 F.3d at 241.

14

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.     DISCUSSION

### A.     The Parties' Contentions

Plaintiff raises two challenges to the ALJ's decision.  First, Plaintiff contends that the ALJ erred by failing to give controlling weight to the opinion of her treating psychiatrist, Dr. Gollamudi, and by failing to specify the weight given to other opinions, including that of her treating therapist, Ms. Violand. (Doc. #9 at 12-16, Doc. #13 at 1-5).  She urges that evaluation of her mental impairments consistent with the opinions of the psychological professionals treating her would have led to a conclusion that her condition satisfied Listing 12.04 for affective disorders.  (Doc. #9 at 16-17).  Second, Plaintiff argues that the

15

ALJ erred by relying on the vocational expert's response to an improper hypothetical question that did not accurately portray Plaintiff's vocational abilities. (Doc. #9 at 17-18, Doc. #13 at 5).

In opposing Plaintiff's stated errors, the Commissioner argues that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence. (Doc. #12 at 7-13). He asserts that the ALJ properly weighed the treating psychiatrist's opinion in light of other evidence, and was justified in rejecting treating therapist Ms. Violand's opinion. (*Id.* at 8-11). The Commissioner further maintains the ALJ's hypothetical properly incorporated Plaintiff's restrictions that the ALJ found to exist. (*Id.* at 13).

### B. <u>Medical Source Opinions</u>

#### 1. *Treating Medical Sources*

Key among the standards to which an ALJ must adhere is the principle that greater deference generally is given to the opinions of treating medical sources than to the opinions of a non-treating medical source. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see* 20 C.F.R. § 416.927(d)(2). This is so, the Regulations explain, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a DIB claimant's] medical impairment(s) and may bring a unique perspective to the

medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examiners, such as consultative examinations or brief hospitalizations . . ." 20 C.F.R. § 416.927(d)(2); *see also Rogers*, 486 F.3d at 242. In light of this, an ALJ must apply controlling weight to a treating source's opinion when it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 416.927(d)(2).

If either of these attributes is missing, the treating source's opinion is not deferentially due controlling weight, *Rogers*, 486 F.3d at 242; *see Wilson*, 378 F.3d at 544, but the ALJ's analysis does not end there. Instead, the Regulations create a further mandatory task for the ALJ:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable [data] . . . or is inconsistent with other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected . . .

Social Security Ruling 96-2p, 1996 WL 374188, at *4. The Regulations require the ALJ to continuing the evaluation of the treating source's opinions by considering "a host of other factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's

conclusions; the specialization of the physician; and any other relevant factors."
*Rogers*, 486 F.3d at 242; *see Wilson*, 378 F.2d at 544.

"[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician [or psychologist] is entitled to great deference, its non-controlling status notwithstanding."  *Rogers*, 486 F.3d at 242.

### 2. *Non-Treating Medical Sources*

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."  Social Security Ruling 96-6p, 1996 WL 374180, at *2.  Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source.  *See id.*, at **2-3.  The Regulations explain, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."  20 C.F.R. § 416.927(b).  To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in § 416.927(d), including, at a minium, the factors of supportability, consistency and specialization.  *See* 20 C.F.R. § 416.927(f); *see also* Ruling 96-6p at *2-*3.

### C.  **Analysis**

18

Applying the above analysis to this case, the Court finds that the ALJ erred with respect to his treatment of the opinion of Dr. Gollamudi.  The ALJ articulated his rationale for discounting Dr. Gollamudi's and Ms. Violand's opinions as follows, in full:

> The claimant's psychiatrist and her therapist both reported that the claimant would be unemployable for twelve months or longer.  They also both reported that the claimant's mental disorders were of Listing level severity.  However, these opinions are inconsistent with the treatment notes which indicated a positive response to medication and therapy.  As the opinion[s] are not well-supported [by] the record, they cannot be accepted. It is further noted that social workers are not acceptable medical sources under the provisions of 20 CFR 404.1513(a) and 416.913(a).

(Tr. 32) (citations to the record omitted).

In summarily rejecting Dr. Gollamudi's opinion without further elaboration, the ALJ failed to abide by the Social Security regulations and the law of the Sixth Circuit.  *See* 20 C.F.R. § 416.927(d); *Wilson*, 378 F.3d at 541.  An ALJ must satisfy the clear procedural requirement of giving "good reasons" for discounting a treating physician's opinion, meaning "reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion *and* the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (citing Social Security Ruling 96-2p, 1996 WL

19

374188, at *5) (emphasis added); *see also Wilson*, 378 F.3d at 544.  This procedural "good reason" rule serves both to ensure adequacy of review and to permit the claimant to understand the disposition of his case. *Rogers,* 486 F.3d at 242.

Here, the ALJ's stated rationale is not "sufficiently specific" to satisfy the requirements of the rule, particularly given that nothing in Dr. Gollamudi's treatment notes suggests that Plaintiff had responded so positively to medication and therapy that she could be expected to be able to sustain employment on a regular and continuing basis.  As Plaintiff argues, at no point during four-plus years of treatment (*see* Tr. 844-905, 1009-20) did Dr. Gollamudi indicate that a reduction in the frequency of Plaintiff's office visits was warranted.  (*See* Doc. # 9 at 13).  The ALJ does not explain why some indications that Plaintiff was improving with treatment completely negate her psychiatrist's opinion that she was unable to work.

Moreover, even had the ALJ adequately explained his reasons for concluding that Dr. Gollamudi's opinion was "inconsistent" with and "not well-supported" by the record (*see* Tr. 32), his conclusion that Dr. Gollamudi's opinion was not entitled to controlling weight did not relieve the ALJ of the obligation to consider the requisite "other factors" in determining the amount of weight to give that opinion.  For example, the ALJ nowhere addressed the significant factor

20

of the length and frequency of Dr. Gollamudi's treatment relationship with

Plaintiff.  He also neglected to mention that Dr. Gollamudi's opinion was largely

<u>consistent</u> with the opinion of consultative examiner Dr. Bonds.  (*See* Tr. 717-24).

Despite citing some reasons for discounting Dr. Gollamudi's opinion, then, ALJ

Armstead never fully explained how those reasons affected the weight he gave to

Dr. Gollamudi's opinion, or even what weight he ultimately accorded that

opinion.  *See Rogers*, 486 F.3d at 246.

Only where a treating doctor's opinion "is so patently deficient that the

Commissioner could not possibly credit it" will the ALJ's failure to observe the

requirements for assessing weight to a treating physician opinion not warrant a

reversal.  *Wilson*, 378 F.3d at 547.  As explained by the Sixth Circuit in *Rogers*:

> Because of the significance of the notice requirement in
> ensuring that each denied claimant receives fair process,
> a failure to follow the procedural requirement of
> identifying the reasons for discounting the opinions *and*
> for explaining precisely how those reasons affected the
> weight accorded the opinions denotes a lack of
> substantial evidence, *even where the conclusion of the ALJ*
> *may be justified based upon the record.*

*Rogers,* 486 F.3d at 243 (emphasis added) (citation omitted).  The Court in this

case cannot excuse the ALJ's omissions as to Dr. Gollamudi's opinion because

there is no reason to conclude that such opinion is "patently deficient."  Because

he failed to identify adequate reasons for giving Dr. Gollamudi's opinion no

21

weight, the ALJ's rejection of the treating psychiatrist's assessment of Plaintiff's

functional capacity is not supported by substantial evidence.  Such legal error

warrants reversal and remand of this case for reconsideration of Plaintiff's

residual functional capacity, with proper analysis of the weight given to Dr.

Gollamudi's residual functional capacity assessment, consistent with the treating

source regulation.  20 C.F.R. § 416.927(d).  *Rogers,* 486 F.3d at 246; *Wilson*, 378 F.3d

at 546.

Similar error afflicts the ALJ's evaluation of the opinion of Plaintiff's

treating therapist, Ms. Violand.  Although the ALJ correctly observed that social

workers such as Ms. Violand do not qualify as "acceptable medical sources" (*see*

Tr. 32), her opinion nonetheless cannot be rejected out of hand.  Social Security

Ruling 06-03p specifies how the Commissioner is to consider opinions and other

evidence from those who are not "acceptable medical sources," providing as

follows:

> With the growth of managed health care in recent years
> and the emphasis on containing medical costs, medical
> sources who are not "acceptable medical sources," such
> as . . . licensed clinical social workers, have increasingly
> assumed a greater percentage of the treatment and
> evaluation functions handled primarily by physicians
> and psychologists.  Opinions from these medical
> sources, who are not technically deemed "acceptable
> medical sources" under our rules, are important and
> should be evaluated on key issues such as impairment

> severity and functional effects, along with the other
> evidence in the file.

*Id.*, 2006 WL 2329939, at *3.  Further, Ruling 06-03p explains that opinions from

non-medical sources who have seen the claimant in their professional capacity

should be evaluated "by using the applicable factors, including how long the

source has known the individual, how consistent the opinion is with other

evidence, and how well the source explains the opinion."  *See Cruse* v. *Comm'r of*

*Soc. Sec.,* 502 F.3d 532, 541 (6th Cir. 2007) (citations omitted).  Finally, this Ruling

states that:

> [a]lthough there is a distinction between what an
> adjudicator must consider and what the adjudicator
> must explain in the disability determination or decision,
> the adjudicator generally should explain the weight
> given to opinions for these "other sources," or otherwise
> ensure that the discussion of the evidence in the
> determination or decision allows a claimant or
> subsequent reviewer to follow the adjudicator's
> reasoning, when such opinions may have an effect on
> the outcome of the case.

SSR 06-03P, 2006 WL 2329939, at *6.

As noted above, Ms. Violand opined that Plaintiff's mental disorders were

of Listing-level severity and that Plaintiff would be  unemployable for 12 months

or longer.  (*See* Tr. 937-38, 998-1001).  In summarily dismissing that opinion, the

ALJ neither mentioned nor considered the nature and extent of Ms. Violand's

treatment relationship with Plaintiff, and also did not elaborate on the supportability of Ms. Violand's opinion or its consistency with other evidence of record (including the opinions of Drs. Gollamudi and Bonds).  Again, this omission was error.

Finally, the ALJ's decision does not make clear how he arrived at his residual functional capacity conclusion.  The only medical opinions contrary to that of Dr. Gollamudi were those of the non-examining, State Agency reviewing psychologists.  (*See* Tr. 725-42).  The ALJ himself noted, however, that while Drs. Wagner's and Swain's opinions "were reasonable based on the evidence available at that time, additional evidence received into the record indicated that Plaintiff was more limited than originally thought."  (Tr. 32).  Accordingly, such findings cannot be considered to be based on substantial evidence, and the record appears to be devoid of any other medical opinion indicating that Plaintiff can perform the activities encompassed by the RFC found by the ALJ.

While the Court recognizes that determining a plaintiff's RFC based on the record as a whole is the function of the ALJ, an ALJ nonetheless cannot substitute his "medical" opinion for that of a treating or examining doctor.  *See Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985); *Sigler v. Sec'y of*

*Health & Human Servs.*, 892 F. Supp. 183, 187-88 (E.D. Mich. 1995).  In rendering

his RFC decision, an ALJ must give some indication of the specific evidence on

which he is relying and of the clinical findings associated with the limitations he

has found.  Otherwise, a reviewing court would be left to speculate as to the

method utilized and evidence relied upon by the ALJ in arriving at his RFC

determination.  That is the situation here, where this Court simply cannot discern

from the record or the ALJ's decision the underlying basis for the ALJ's RFC

findings.  As this lack of specificity leaves the Court unable to determine whether

or what substantial evidence supports the ALJ's RFC determination, the Court

cannot sustain that determination.

Finally, Plaintiff contends that the hypothetical posed by the ALJ to the

vocational expert did not accurately set forth all of Plaintiff's impairments and

limitations, and that the ALJ therefore erred in relying on the VE's response to

that hypothetical to conclude that Plaintiff is not disabled.  (Doc. # 9 at 17-18,

Doc. #13 at 5).  Plaintiff focuses in particular on the VE's testimony that an

individual who missed more than 4 days of work per month would not be able to

maintain the entry level, unskilled jobs that he identified in response to the ALJ's

hypothetical question.  (*See* Tr. 1063).

25

Having already concluded that the RFC proposed by the ALJ lacked a discernible evidentiary basis, the Court also must conclude that the ALJ's hypothetical question to the VE incorporating that RFC was not supported by substantial evidence, and the VE's response thus could not support a non-disability finding.

For all the above reasons, Plaintiff's challenges to the ALJ's decision are well taken.

## VI.    REMAND IS WARRANTED

Where the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

Because the evidence of Plaintiff's disability is not overwhelming, nor is the evidence of a disability is strong while contrary evidence is weak, a judicial award of benefits is not warranted in the present case. *See id.* Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration for further proceedings pursuant to Sentence Four of § 405(g) due to the ALJ's failure to weigh the medical source opinions of record as required by the Regulations.

On remand, the Commissioner and the ALJ should be directed to (1) reevaluate the medical source opinions under the legal criteria set forth in the Commissioner's Regulations, Rulings and as required by case law; (2) explain the evaluation of the medical sources as required by the Regulations, Rulings and case law; and (3) determine anew whether Plaintiff is under a "disability."

Accordingly, the case must be remanded to the Commissioner and the ALJ under Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendations.


**IT THEREFORE IS RECOMMENDED THAT**:

    1.    The Commissioner's non-disability finding be VACATED;

2.      No finding be made as to whether Plaintiff Jessica
        Potter was under a "disability" within the
        meaning of the Social Security Act;

3.      This case be REMANDED to the Commissioner
        and the Administrative Law Judge under
        Sentence Four of 42 U.S.C. § 405(g) for further
        consideration consistent with this Report; and

4.      The case be TERMINATED on the docket of this
        Court.


June 2, 2010                                    s/Sharon L. Ovington
                                            Sharon L. Ovington
                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen [14] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).